IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHIRLEY KOSAKOSKI,              )
                                )  Civil Action
              Plaintiff         )  No. 12-cv-00038
                                )
        vs.                     )
                                )
THE PNC FINANCIAL SERVICES      )
  GROUP, INC.,                  )
                                )
              Defendant         )

                      *   *   *


APPEARANCES:

        WAYNE A. ELY, ESQUIRE
              On behalf of plaintiff

        GARY J. LIEBERMAN
        MAUREEN P. FITZGERALD
              On behalf of defendant


                      *   *   *


                O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on Defendant's Motion

for Summary Judgment filed January 23, 2013[1], seeking summary

---

        [1]     Defendant's Motion for Summary Judgment was filed together with
Defendant's Separate Statement of Undisputed, Material Facts in Support of Its
Motion for Summary Judgment and Defendant's Brief in Support of Its Motion for
Summary Judgment.

        On February 18, 2013 Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion for Summary Judgment was filed together with Plaintiff's
Response in Opposition to Defendant's Separate Statement of Undisputed,
Material Facts in Support of Its Motion for Summary Judgment.

        On March 1, 2013 Defendant's Reply Brief in Support of Its Motion
for Summary Judgment was filed.

judgment with respect to plaintiff's Civil Action Complaint filed January 4, 2012.

<u>SUMMARY OF DECISION</u>

For the following reasons defendant's motion is granted in part and denied in part.  Defendant's motion is granted to the extent it seeks summary judgment regarding plaintiff's claims in Count I for age discrimination in violation of the Age Discrimination in Employment Act and in Count IV for gender discrimination in violation of Title VII of the Civil Rights Act of 1964.

Specifically, I conclude that plaintiff has failed to establish a prima facie case to support her claim for age discrimination.  Moreover, plaintiff has failed to establish that defendant's legitimate, non-discriminatory explanation for the adverse actions taken against plaintiff was pretext for gender discrimination.

However, plaintiff has produced sufficient evidence that defendant failed to make reasonable accommodations for plaintiff in violation of the Americans with Disability Act. Moreover, plaintiff has produced sufficient evidence that defendant retaliated against plaintiff for engaging in protected activity under the Americans with Disability Act.  Accordingly, defendant's motion for summary judgment is denied with respect to Counts II and III.

Because plaintiff's claim under the Pennsylvania Human Relations Act ("PHRA") is analyzed in the same manner as plaintiff's federal claims, defendant's motion for summary judgment concerning count V is granted to the extent it seeks summary judgment on plaintiff's PHRA claim for age and gender discrimination, but denied to the extent it seeks summary judgment on plaintiff's PHRA claim for disability discrimination and retaliation.

<u>JURISDICTION</u>

Jurisdiction in this case is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred within this judicial district.

<u>PROCEDURAL HISTORY</u>

On January 4, 2012 plaintiff Shirley Kosakoski initiated this action by filing the within five-count Civil Action Complaint against defendant The PNC Financial Services Group, Inc.

Plaintiff's complaint asserts a claim for violations of the Age Discrimination in Employment Act ("ADEA")(Count I); a claim for discrimination and retaliation under the Americans with Disabilities Act ("ADA") (Counts II and III); a claim for gender

-3-

discrimination in violation of Title VII of the Civil Rights Act
of 1964 (Count IV); and a claim for violations of the
Pennsylvania Human Relations Act ("PHRA") (Count V).

On March 6, 2012 Defendant's Answer to Plaintiff's
Complaint was filed.

On January 23, 2013 defendant filed the within motion
for summary judgment.  On February 18, 2013 plaintiff filed a
response in opposition.  On March 1, 2013 defendant filed a reply
brief in support of its motion for summary judgment.

<u>STANDARD OF REVIEW</u>

Rule 56(a) of the Federal Rules of Civil Procedure
permits a party to seek summary judgment with respect to a claim
or defense, or part of a claim or defense.  Rule 56(a) provides,
in pertinent part, that "[t]he court shall grant summary judgment
if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law."  Fed.R.Civ.P. 56(a); <u>National Association for the
Advancement of Colored People "NAACP" v. North Hudson Regional
Fire & Rescue</u>, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have the
potential to alter the outcome of the case."  <u>Id.</u> (citing
<u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006)).
Disputes concerning facts which are irrelevant or unnecessary do

-4-

not preclude the district court from granting summary judgment.
Id.

Where a party asserts that a particular fact is, or
cannot be, genuinely disputed, the party must provide support for
its assertion.  Fed.R.Civ.P. 56(c)(1).  Rule 56(c)(1) provides
that party may support its factual assertions by

> (A) citing particular parts of materials in the
> record, including depositions, documents,
> electronically stored information, affidavits
> or declarations, stipulations (including
> those made for purposes of the motion only),
> admissions, interrogatory answers, or other
> materials; or

> (B) showing that the materials cited do not
> establish the absence or presence of a
> genuine dispute, or that an adverse party
> cannot produce admissible evidence to support
> the fact.

When considering a motion for summary judgment, the
district court must view the facts and record evidence presented
"in the light most favorable to the non[-]moving party."  North
Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372,
380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

If the moving party shows that there is no genuine
issue of fact for trial, "the non-moving party then bears the
burden of identifying evidence that creates a genuine dispute
regarding material facts." Id. (citing Celotex Corp. v. Catrett,
477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

-5-

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in her pleadings, but rather she must present competent evidence from which a jury could reasonably find in her favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Id. (quoting Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotations omitted and alteration in original).

FACTS

Based upon Defendant's statement of facts, Plaintiff's response to defendant's statement of facts, Oral Depositions of plaintiff and witnesses, Exhibits to depositions, and Declarations of witnesses, the pertinent facts are as follows.

Plaintiff Shirley Kosakoski was born in April 1961.  In 1995 she was diagnosed with clinical depression, and in 2004 she was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD").  Since childhood plaintiff has experienced migraine

-6-

headaches several times a month and in the mid-1990s plaintiff was diagnosed with hyperthyroidism.[2]

On May 7, 2007, when plaintiff was 46 years old, the Bank of Lancaster County hired plaintiff as a Relationship Manager.  Robert Shoemaker, who worked for the Bank of Lancaster as a Business Services Leader interviewed and hired plaintiff.[3]

As a Relationship Manager plaintiff was responsible for the sales and relationship management for 15 to 30 large companies with annual sales ranging between five million dollars and fifty million dollars.[4]

On April 4, 2008 defendant The PNC Financial Services Group, Inc. ("PNC") acquired the Sterling Financial Corporation, including its subsidiary, the Bank of Lancaster.  PNC retained some of the employees at the Bank of Lancaster, who were reassigned to various positions at PNC.[5]

Plaintiff was reassigned to the position of Business Banker III.  Her duties as a Business Banker included supporting retail branch offices, meeting with small businesses (with revenues between one million dollars and ten million dollars),

---

[2]     Defendant's Separate Statement of Undisputed, Material Facts in Support of Its Motion for Summary Judgment ("Defendant's statement of facts"), ¶¶ 1 and 16-18.

[3]     Defendant's statement of facts, ¶¶ 1-2.

[4]     Id. ¶ 3.

[5]     Defendant's statement of facts, ¶ 4; See Defendant's Exhibit C, Oral Deposition of Thomas Sposito, November 29, 2012 ("N.T. Sposito"), page 15-16.

driving the sale of PNC products, and growing her own stock of business.[6]

Plaintiff told Mr. Shoemaker, who was also retained by PNC, that, based on her prior experience as a business banker at another bank, the Business Banker position would not fit her skills. Plaintiff further indicated that the Business Banker position would be a struggle for her and requested that she not be assigned to the position. However, at this point plaintiff did not reveal that she had any medical issues.[7]

Thomas Sposito, who was a Market Manager at PNC, and supervised Mr. Shoemaker, encouraged plaintiff to accept the Business Banker position and told her that within six months to a year of working as a business banker she could transfer to another position at PNC.[8]

Plaintiff accepted the Business Banker III position at PNC and retained her salary. Plaintiff began working for PNC on August 8, 2008. Mr. Shoemaker, who became a Business Banking Manager with PNC, supervised plaintiff, along with a team of ten other Business Bankers.[9]

---

[6]    Defendant's statement of facts, ¶ 6.

[7]    Plaintiff's Response in Opposition to Defendant's Separate Statement of Undisputed, Material Facts in Support of Its Motion for Summary Judgment ("Plaintiff's response to defendant's statement of facts"), ¶ 7; See Defendant's Exhibit A, Oral Deposition of Shirley Kosakoski, November 28, 2012 ("N.T. Kosakoski"), pages 24 and 36; Defendant's statement of facts, ¶ 8.

[8]    N.T. Kosakowski, page 38.

[9]    Defendant's statement of facts, ¶¶ 10-11.

In her new role as a Business Banker, plaintiff supported three PNC branch offices within a sixteen-mile radius: the Manheim, Litiz and North Pointe branches. The North Pointe branch was located on the first floor, where plaintiff kept the same third-floor office she had used when working for the Bank of Lancaster.[10]

PNC set sales goals for Business Bankers depending on their level of experience. Plaintiff received a positive performance evaluation for her work from the period of May 2008 through May 2009, which included some of her time at the Bank of Lancaster. However, plaintiff was not meeting certain sales goals.[11]

On September 10, 2009 plaintiff met with Mr. Shoemaker to discuss how she could meet her sales goals in the future. At some point in late 2009 Mr. Shoemaker informed plaintiff that he could not do her job at her age.[12]

---

[10]    Defendant's statement of facts, ¶ 12.

[11]    See Plaintiff's Exhibit P-10, attached to plaintiff's deposition.

[12]    N.T. Kosakoski, pages 218-219; defendant's statement of facts, ¶ 92.

       Mr. Shoemaker managed a group of employees he called the "Rising Stars". The group did not have a written list of members, but consisted of relatively inexperienced employees, 75% of whom were under 40 years old.

       The group was predominantly male, but appears to have had some female members. N.T. Kosakowski, page 87; Exhibit B to plaintiff's summary judgment motion, Oral Deposition of Robert Shoemaker, November 29, 2012 ("N.T. Shoemaker"), pages 55-58.

Prior to her discussion with Mr. Shoemaker, in August 2009 and again in September 2009, plaintiff called PNC's Employee Relations Information Center ("ERIC") and explained that because of existing medical conditions she felt stress, anxiety and was overwhelmed in her job.  Plaintiff also asked about possible job accommodations.[13]

PNC recommended that plaintiff take time off pursuant to the Family and Medical Leave Act ("FMLA").  Accordingly, plaintiff requested FMLA leave, which PNC granted from October 16, 2009 to November 15, 2009.[14]

Upon her return from FMLA leave, plaintiff called PNC's Human Resources Department and again requested job accommodations for her medical conditions.  Specifically, plaintiff requested that she be permitted to work a flexible work schedule and be provided remote computer access to allow her to work from home. Further plaintiff requested that she be granted intermittent FMLA leave.[15]

After meeting with representatives of PNC's Employee Relations Department, PNC granted plaintiff's request to be

---

[13]    Defendant's statement of facts, ¶ 19.

[14]    Id., ¶ 20-21.

[15]    Plaintiff's response to defendant's statement of facts, ¶ 23.

-10-

permitted to take intermittent FMLA leave.  PNC also permitted to
work from home unless certain meetings were scheduled.[16]

Although plaintiff was permitted to work from home,
plaintiff had difficulty accessing PNC's network remotely from
her company laptop computer.  When plaintiff told PNC about the
difficulties she was having using her laptop from home, PNC
instructed her to talk to the Information Technology Department.
However, despite numerous inquiries with the IT Department,
plaintiff was unable to obtain remote access effectively.[17]

Although plaintiff met all of her sales goals in 2009,
in 2010 plaintiff was "floundering" in her job and did not
achieve her sales goals.  On February 1, 2010 Mr. Shoemaker
provided plaintiff with a written performance warning for failing
to meet her sales goals and for her failure to attend a
January 13, 2010 meeting.[18]

Plaintiff disagreed with Mr. Shoemaker's assessment and
called PNC's ERIC hotline about the written evaluation.
Plaintiff asserted that Mr. Shoemaker had altered her sales
numbers and did not account for the time she was on FMLA leave.
Moreover, plaintiff asserted that she missed the January 13, 2010

---

[16]     N.T. Kosakoski, page 69.

        Plaintiff later learned that Business Bankers at PNC were
generally permitted have a flexible schedule.

[17]     N.T. Kosakoski, page 69-71; Plaintiff's response to defendant's
statement of facts.

[18]     Exhibit P-13, attached to plaintiff's deposition.

meeting because she had a doctor's appointment, which she had previously scheduled, and received permission to attend.

Plaintiff suggested to the ERIC hotline that the written warning was discriminatory and that Mr. Shoemaker favored younger, male workers over older, female employees.  As an example, plaintiff alleged that in 2008 Mr. Shoemaker selected Adam Althouse, a 26-year-old male, for a Treasury Management position which plaintiff had also applied for, even though plaintiff was more qualified for the position.[19]

After plaintiff's issued her complaints, PNC assigned an Employee Relations Investigator, Karen Barber,[20] to investigate plaintiff's complaints of discrimination and retaliation.  As part of the investigation, Ms. Barber interviewed Mr. Shoemaker and Mr. Shoemaker's direct supervisor, Dennis Ginder.[21]

At the conclusion of her investigation, Ms. Barber concluded that Mr. Shoemaker's written evaluation of plaintiff required corrections.  Specifically, Mr. Shoemaker had

---

[19]    N.T. Kosakoski, pages 40-41, 161-162, 189 and 231-232; Defendant's statement of facts, ¶ 32-34; Plaintiff's response to defendant's statement of facts, ¶ 34.

[20]    It is not clear from the record whether Karen Barber or Gail Dampman was initially assigned to investigate plaintiff's complaints. However, Ms. Barber concluded the investigation.

[21]    Defendant's Exhibit F, Oral Deposition of Karen Barber, November 29, 2012 ("N.T. Barber"), page 23.

erroneously calculated plaintiff's sales numbers because he did not account for her time away on FMLA leave.[22]

However, Mr. Shoemaker resigned shortly after Ms. Barber's investigation was complete. Accordingly, Ms. Barber advised plaintiff that Mr. Ginder would correct Mr. Shoemaker's written evaluation of plaintiff. However, PNC never told plaintiff whether the corrections were actually made and her evaluation revised.[23]

Beginning in February 2010 plaintiff requested additional accommodations for her job. Plaintiff's customer base had grown from 30 to 800 and plaintiff requested that PNC provide her with an administrative assistant. Additionally, plaintiff requested that the number of branches that she covered be reduced from three to one and that her office be moved from the third floor to the first floor. Plaintiff also requested to be reassigned to another position.[24]

Plaintiff spoke with PNC's Senior Employee Relations Specialist, Lori Lockard each month. Ms. Lockard requested that plaintiff provide her with documentation to support plaintiff's requests for accommodations. Accordingly, plaintiff submitted to

---

[22]   Defendant's Exhibit G, Oral Deposition of Dennis Ginder, November 29, 2012 ("N.T." Ginder"), page 12; N.T. Kosakoski, page 155.

[23]   Id.

[24]   Plaintiff's response to defendant's statement of facts, ¶ 40.

-13-

Ms. Lockard a medical questionnaire, which was completed by a physician.  The medical questionnaire indicated that plaintiff suffered from certain limitations because of ADHD.  However, the questionnaire did not recommend specific accommodations, but rather indicated that such recommendations were forthcoming.[25]

In March 2010 plaintiff provided Ms. Lockard with a Neuropsychological Evaluation Report completed by Dr. Cynthia Socha-Gelgot.  The evaluation report recommended that (1) plaintiff be permitted to work in only one branch rather than three; (2) plaintiff be permitted to utilize a flexible schedule and access PNC's network from home; and (3) plaintiff be provided with at least a part-time administrative assistant.[26]

Further the evaluation report recommended that "if her employer is not able to accommodate her disability, then she should consider asking her employer to place her in a job role that she is able to perform."[27]

In March 2010 PNC reduced the number of branches that plaintiff managed from three to two.  In December 2010 PNC reduced the number of branches plaintiff managed to one, the North Pointe Branch.[28]

---

[25]    Plaintiff's response to defendant's statement of facts, ¶ 43.

[26]    Defendant's statement of facts, ¶ 45.

[27]    Id.

[28]    Plaintiff's response to defendant's statement of facts, ¶ 47.

However, plaintiff's office was not in the branch itself.  Instead, plaintiff's office was located on the third floor of the North Pointe Branch location.  Moreover, plaintiff's third floor office did not have a printer.[29]

Plaintiff requested that she be provided an office in a first floor conference room of the North Pointe branch.  However, that office was utilized approximately once a week by an employee of PNC Investments, and PNC rejected plaintiff's request to provide a first floor office.[30]

Plaintiff also requested that PNC provide her with an administrative assistant to assist her with her duties as a Business Banker.  Ms. Lockard requested plaintiff submit further documentation to support her request for an administrative assistant, which plaintiff did not do.  Ultimately, PNC denied plaintiff's request for an administrative assistant.[31]

Plaintiff also requested to be transferred, or laterally reassigned, from her position as Business Banker to another role within PNC.  However, PNC typically hires the most qualified applicants for any vacancy, rather than automatically

---

[29]     N.T. Kosakoski, page 76 and 79-80.

[30]     Id.

[31]     Id., page 266.

Although PNC did not provide plaintiff with an assistant, PNC provided all Business Bankers with a 1-800 number, which Business Bankers could use if they had questions about a specific product.  However, the 1-800 number did not provide administrative support.  (N.T. Kosakoski, page 57; Plaintiff's response to defendant's statement of facts, ¶ 57).

transfer current employees to vacant positions.  Accordingly, PNC told plaintiff that she would not be reassigned, but that plaintiff could apply for any open positions posted by PNC.[32]

Plaintiff worked with recruiters at PNC and applied for a number of vacant positions at PNC.  Specifically, plaintiff applied for an Equipment Finance position and a position as a Credit Review Officer.  However, defendant did not fill either of the positions.[33]

Additionally, plaintiff applied for a Relationship Manager II position.  However, after plaintiff applied for the position, PNC changed the position into a Relationship Manager III position.  PNC interviewed plaintiff for the position, but told her they wanted someone with more experience.  However, PNC ultimately hired Christopher White who was approximately 29 years old and had fewer qualifications than plaintiff.[34]

In addition to the positions plaintiff applied for, a vacancy opened for a Business Advisor position and a position as a Banking Sales Manager, each of which plaintiff was qualified for.[35]

---

[32]     N.T. Kosakoski, pages 91-92; Exhibit D to defendant's summary judgment motion, Oral Deposition of Lori Lockard, November 20, 2012 ("N.T. Lockard"), page 35.

[33]     N.T. Kosakoski, pages 96-97.

[34]     Id., pages 111-114.

[35]     Id., pages 184-185.

However, plaintiff was not informed that the positions were vacant until after they were filled.  Additionally plaintiff thought that, because she had requested a transfer based on her disability, she did not have to formally apply for the positions. Accordingly plaintiff did not apply for either the Banking Sales Manager or Business Banker position.[36]

Accordingly, PNC promoted Don Switzler as the Business Advisor and Terry Bender as the Banking Sales Manager.  Plaintiff was slightly more qualified than Mr. Switzler but significantly more qualified that Mr. Bender.  In fact, Mr. Bender did not have any management experience and had only worked with PNC for six months.[37]

In April 2010 plaintiff applied for the position of Wealth Management Advisor at PNC.  Plaintiff was interviewed by Caron Yon and Shane Zimmerman, neither of whom were aware of plaintiff's medical issues.  PNC hired Robert Walter, who was 56 years old at the time, for the position.  Unlike plaintiff, Mr. Walter had private banking experience and extensive wealth management experience.  However, subsequent to the hiring

---

[36]     N.T. Kosakoski, pages 184-185.

[37]     Id.

decision, Ms. Yon told plaintiff that she was an equally qualified as Mr. Walter.[38]

On June 10, 2010 plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging age, sex and disability discrimination.  Plaintiff alleged that PNC's hiring of Mr. Althouse and Mr. Walter was discriminatory and in retaliation for plaintiff taking FMLA leave.[39]

Meanwhile, plaintiff continued to fall short of her sales goals.  Plaintiff, who began reporting to Andy Klinger in May of 2010, received a performance evaluation which indicated that she "marginally achieves".[40]

Plaintiff told Mr. Klinger that PNC had not provided the accommodations that she had requested.  However, Mr. Klinger indicated that the Human Resources Department considered requests for accommodations and that he only dealt with performance numbers.  On October 19, 2010 Mr. Klinger gave plaintiff a verbal warning concerning her performance.[41]

PNC typically does not permit employees with substandard performance evaluations to apply for vacant positions

---

[38]    N.T. Kosakoski, 106-107; Defendant's statement of facts, ¶¶ 66-67; Exhibit H to defendant's summary judgment motion, Declaration of Carol Yon; Exhibit J to defendant's summary judgment motion, Declaration of Shane Zimmerman.

[39]    Defendant's statement of facts, ¶ 86.

[40]    N.T. Kosakoski, pages 121-122.

[41]    Id., pages 121-122.

within PNC.  Mr. Klinger permitted plaintiff to apply for open positions despite her negative evaluation.  However, plaintiff's negative review remained in her file.[42]

On June 22, 2010 DeeAnn Carpenter, PNC's Manheim Branch Manager alerted the ERIC hotline that plaintiff may have violated PNC policy by submitting applications for business accounts without proper documentation.  Plaintiff suspected Mr. Klinger may have directed the Ms. Carpenter to report plaintiff.[43]

After PNC investigated the matter, Employee Relations Investigator Frances Lewis concluded that plaintiff had not violated PNC policy and plaintiff was not disciplined.[44]

On October 27, 2010 plaintiff filed another charge with the EEOC alleging disability and gender discrimination and retaliation.  This charge alleged that PNC promoted two less-qualified males and that PNC had still failed to provide accommodations for her disability.  Plaintiff further indicated that PNC had given her a "bogus" performance evaluation.[45]

On December 29, 2010 Mr. Klinger issued an "Action Plan" to plaintiff, which indicated that plaintiff "must show

---

[42]     N.T. Lockard, pages 38-39; N.T. Kosakoski, pages 113-114.

[43]     Defendant's statement of facts, ¶ 75; N.T. Kosakoski, page 286; see also Defendant's Exhibit K, Declaration of Frances Lewis.

[44]     Defendant's statement of facts, ¶ 78.

[45]     Id., ¶ 87.

immediate and sustained improvement for the production standards established for a Business Banker".[46]

On June 10, 2011 Mr. Klinger issued written Corrective Action Form to plaintiff, which indicated that plaintiff had failed to meet the minimum production goals for a Business Banker.  The form further indicated that "Immediate and sustained improvement" was expected and that failure to show improvement might result in further corrective action, "including probation and termination."[47]

On May 25, 2011, prior to receiving the written corrective action form, plaintiff had applied for a commercial loan officer position with Ephrata National Bank.  On July 2, 2011 plaintiff received a job offer from Ehrata.  On July 8, 2011 plaintiff notified Mr. Klinger that she had accepted the position with Ephrata.  She offered two weeks notice, however Mr. Klinger told plaintiff to vacate PNC's premises immediately.[48]

On April 4, 2012 plaintiff filed the within lawsuit alleging violations of the Age Discrimination in Employment Act (Count I), discrimination and retaliation under the Americans with Disabilities Act (Counts II and III), gender discrimination

---

[46]    Defendant's statement of facts, ¶ 79; N.T. Kosakoski, page 243.

[47]    N.T. Kosakoski, page 243; Plaintiff's Exhibit P-17, attached plaintiff's deposition transcript.

[48]    Defendant's statement of facts, ¶¶ 82-84; Plaintiff's statement of facts, ¶ 84.

under Title VII of the Civil Rights Act of 1964 (Count IV), and identical claims for age, disability and gender discrimination pursuant to the Pennsylvania Human Relations Act.

<u>CONTENTIONS OF THE PARTIES</u>

<u>Contentions of Defendant</u>

Defendant contends that it is entitled to summary judgment on each of plaintiff's claims.

Regarding plaintiff's claims for violations of ADEA and Title VII, as an initial matter, defendant contends that plaintiff's claims are limited to the two positions she applied for, and was not selected to (Treasury Management Officer and Wealth Management Advisor), and the two positions that she did not apply for but alleges that PNC promoted males that were less qualified than her (Business Advisor and Banking Sales Manager).

Regarding the position of Treasury Management Officer, defendant contends that because plaintiff was not selected for that position in November 2008, and because plaintiff did not file her first EEOC charge until June 10, 2010, that claim is untimely.

Regarding the Wealth Management Advisor position, defendant contends that plaintiff cannot establish a prima facie case of age discrimination because Robert Walter, who was hired for the position, is older than plaintiff.

Additionally, defendant contends that plaintiff cannot establish that PNC's decision to hire Mr. Walter was based on gender discrimination because plaintiff has failed to provide evidence that PNC's purported reason for hiring Mr. Walter--that he was more qualified--was pretextual.

Regarding the positions of Business Advisor and Business Banking Advisor, defendant contends that plaintiff cannot establish a prima facie case for age or gender discrimination because she did not apply for, or express any interest in, those positions.  Further, defendant contends that plaintiff cannot establish that PNC's promotion decisions were motivated by age or gender animus.

Furthermore, defendant contends that plaintiff's poor performance evaluations do not provide a basis for recovery because the appraisal she received from Mr. Shoemaker and Mr. Klinger do not constitute adverse employment actions under ADEA or Title VII.

Likewise, defendant contends that it is entitled to summary judgment with respect to plaintiff's discrimination and retaliation claims brought pursuant to the ADA.

Regarding her ADA discrimination claim, defendant contends that plaintiff cannot establish that she suffered from an adverse action because of her disability.  More specifically, defendant contends that neither the negative performance

-22-

evaluations or PNC's investigation of misconduct constitute adverse actions.  Further, defendant contends that neither Ms. Yon or Mr. Zimmerman, who hired Mr. Walter instead of plaintiff as Wealth Management Advisor, were aware of plaintiff's disability.

Likewise, defendant contends that plaintiff cannot establish that defendant failed to make reasonable accommodations for plaintiff because PNC engaged in an interactive process with plaintiff and granted her accommodation requests that were reasonable.  Defendant contends that plaintiff's requests for a first-floor office and an administrative assistant were not reasonable.  Further, defendant contends that plaintiff is not entitled to be automatically reassigned to a vacant position as an accommodation for a disability.

Regarding plaintiff's ADA retaliation claim, defendant contends that plaintiff cannot establish that PNC's decision not to select her for the Wealth Management Advisor position was retaliatory because neither Ms. Yon or Mr. Zimmerman knew about plaintiff's medical issues.

Nor, defendant contends, can plaintiff establish that Mr. Shoemaker's and Mr. Klinger's negative evaluations of her performance were retaliatory.  With respect to Mr. Shoemaker's evaluation of plaintiff, defendant contends that PNC rescinded and corrected the evaluation.  With respect to Mr. Klinger's

evaluation, defendant contends that plaintiff admits she did not meet her sales goals, and that therefore Mr. Klinger's evaluation was not retaliatory, but was justified.

Likewise, defendant contends that plaintiff has not provided any evidence that PNC's internal investigation of plaintiff's alleged policy violation was retaliatory.

<u>Contentions of Plaintff</u>

Plaintiff contends that defendant is not entitled to summary judgment because genuine issues of material fact are in dispute with respect to each of her claims.

Regarding her ADEA claim, plaintiff contends that she has established a prima facie case for age discrimination because she was as qualified as Mr. Walter, who was offered the position of Senior Banking Advisor.  Furthermore, plaintiff contends that she was more qualified than Mr. Althouse, the 26-year-old male, who was selected for the Treasury Management position.  Plaintiff contends her claim concerning the Treasury Management position is not barred because the doctrine of equitable tolling excused her from filing a timely EEOC charge.

Additionally, plaintiff contends that the negative performance evaluations constituted adverse actions because they "poisoned the well" and spoiled her chances to obtain positions within PNC.[49]

---

[49]   Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, page 16.

Similarly, plaintiff contends that her failure to apply for the Business Advisor and Banking Sales Manager positions does not preclude her age discrimination claim because PNC failed to inform her of the openings despite her indicating her desire to be transferred.

Regarding her Title VII claim, plaintiff contends that she has established a prima facie case of gender discrimination because she was qualified for, and sought the Wealth Management Advisor and Treasury Management positions at PNC, which were both filled by men.

Similar to her ADEA claim, plaintiff contends her failure to apply for the Business Advisor and Banking Sales Manager positions does not preclude her from pursuing her Title VII claim because defendant failed to inform plaintiff of the openings.  Likewise, plaintiff contends that her negative performance evaluations constitute adverse actions under Title VII.

As an additional basis for recovery, plaintiff contends that she was subject to a constructive discharge because her resignation resulted from working conditions so intolerable that a reasonable person would have resigned.

Plaintiff also contends that she has produced sufficient evidence to proceed to trial in her discrimination and retaliation claims pursuant to the ADA.

-25-

Regarding her ADA discrimination claim, plaintiff contends that PNC failed to make reasonable accommodations and failed to show how plaintiff's requested accommodations would have caused undue hardship for PNC.

Plaintiff contends that allowing plaintiff to take FMLA leave and providing her with a flexible work schedule do not constitute accommodations because FMLA leave is required, and all Business Bankers had flexible work schedules.  Furthermore, plaintiff asserts that providing a flexible work schedule did not accommodate her because defendant failed to provide her with the capability to effectively access PNC's network remotely.

Although plaintiff acknowledges that PNC accommodated her by assigning her to one branch instead of three, initially defendant only reduced plaintiff's assignments to two branches from three.

Plaintiff also contends that her request for a first floor office, her request for an administrative assistant and her request for reassignment to a different position were all reasonable requests for accommodations.

Regarding her retaliation claim, plaintiff contends that defendant is not entitled to summary judgment because plaintiff has produced evidence that she was subject to retaliatory action based on protected conduct.  Specifically,

plaintiff contends that Mr. Shoemaker's negative performance evaluation was in retaliation for her utilizing FMLA leave.

Likewise, plaintiff asserts that Mr. Klinger's negative performance evaluation was in retaliation for her seeking accommodations pursuant to the ADA. Additionally, plaintiff contends that plaintiff was retaliated against by Ms. Carpenter, who, under the direction of Mr. Klinger, falsely reported plaintiff to be in violation company policy.

Finally, plaintiff asserts that although Ms. Yon and Mr. Zimmerman state that they were not aware plaintiff was disabled, there may have been "internal chatter" about her medical issues and therefore a dispute of fact exists as to whether plaintiff was not selected because of her disabilities.

<u>DISCUSSION</u>

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age". 29 U.S.C. § 623(a).

Likewise, Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee because of an "individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2.

Similarly, the Americans with Disabilities Act ("ADA") prohibits discrimination "against a qualified individual on the basis of disability".  42 U.S.C. § 12112.

Plaintiff contends that her non-selection for the following positions was unlawfully discriminatory in violation of ADEA, Title VII and the ADA: (a) Equipment Finance Officer; (b) Credit Review Officer; (c) Treasury Management Officer; (d)Wealth Management Advisor; (e) Business Advisor; and (f) Banking Sales Manager.[50]

Plaintiff also asserts that her negative performance evaluations, which she received from Mr. Shoemaker and Mr. Klinger were unlawfully discriminatory and in retaliation for her engaging in protected conduct.  Likewise, plaintiff contends that PNC launched an internal investigation against her because she engaged in protected conduct.

_____

[50]     As described in the Facts section of this Opinion, above, plaintiff applied for the position of Wealth Management Advisor, which was filled by Mr. Walter, and the position of Treasury Management Officer, which was filled by Mr. Althouse.

Additionally, plaintiff applied for the positions of Equipment Finance and Credit Review Officer, neither of which were filled by PNC.

Finally, plaintiff was not informed of, and therefore did not apply for, the positions of Business Advisor, which was filled by Mr. Switzler, and Banking Sales Manager, which was filled by Mr. Bender.

In her deposition, plaintiff also indicates that PNC's failure to select her as a Relationship Manager was also unlawful (N.T. Kosakoski, page 184).  However, neither party refers to this position in their statement of undisputed facts or briefing.  Nor does plaintiff refer to her non-selection for the Relationship Manager position in her complaint.  Therefore, I do not interpret plaintiff's claims to be based upon her non-selection as the Relationship Manager.

Additionally, plaintiff asserts that defendant failed to make reasonable accommodations for plaintiff in violation of the ADA.

Finally, plaintiff contends that PNC's workplace was so pervasive with unlawful discrimination that she was constructively discharged.

### Exhaustion Requirements with the EEOC

Before bringing an ADEA, Title VII or ADA claim in federal court, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Thompson v. Keystone Human Services, 2012 U.S.Dist. LEXIS 15200 at *15 (M.D.Pa. Feb. 7, 2012). The purpose of the administrative exhaustion requirement is to "put the EEOC on notice of the plaintiff's claims and afford it the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Id.

Accordingly, the "parameters of the civil action" in federal court are defined by the scope of the EEOC charge. Butterbaugh v. Douglas, 479 F.Supp.2d 485, 497 (W.D.Pa. 2007). Therefore, an action alleging ADEA, Title VII or ADA violations must "fall fairly within the scope of the prior EEOC complaint or the investigation arising therefrom." Id.

Additionally, the charge filed with the EEOC must be filed within 300 days of the alleged discriminatory conduct. Thompson, 2012 U.S.Dist. LEXIS 15200 at *15.

However, the limitations period to file a charge with the EEOC only "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." National Railroad Passenger Corporation, 536 U.S. 101, 105, 122 S.Ct. 2061, 2068, 153 L.Ed.2d 106, 122 (2002). For hostile work environment claims, a plaintiff may recover for unlawful behavior outside the statutory period, so long as any act contributing to the hostile environment takes place within the statutory time period. Id.

A "discrete" retaliatory or discriminatory act, such as "termination, failure to promote, denial of transfer, or refusal to hire", constitutes a separate actionable unlawful employment practice. Accordingly a "discrete act" occurs on the day it happens. National Railroad Passenger Corporation, 536 U.S. at 110, 113, 122 S.Ct. at 2070, 2073, 153 L.Ed.2d 106, 122.

However, filing a timely charge with the EEOC is not a jurisdictional prerequisite for bringing suit in federal court. Rather, like a statute of limitations, it is "subject to waiver, estoppel, and equitable tolling". National Railroad Passenger

-30-

Corporation, 536 U.S. at 113, 122 S.Ct. at 2072, 153 L.Ed.2d at 122.

Specifically, defendant contends that plaintiff may not recover for her non-selection for the Equipment Finance and Credit Review Officer positions, or for her constructive discharge, because she did not assert those allegedly discriminatory actions as a basis for recovery in her EEOC charges or Civil Action Complaint.

Additionally, defendant contends that plaintiff may not recover for her non-selection for the Treasury Management Officer position because she did not file a timely EEOC charge within 300 days of her non-selection to that position.

Plaintiff contends that her non-selection for the Equipment Finance position and her constructive discharge are actionable charges of discrimination.  Further, plaintiff contends that she may recover for her non-selection for the Treasury Management position because the doctrine of equitable tolling renders her EEOC charge timely.

Here, I conclude that plaintiff has failed to exhaust the available administrative remedies for her claims which arise from her alleged constructive discharge, and her non-selection for the Equipment Finance and Credit Review Officer positions.

Although EEOC charges are reviewed liberally, plaintiff's claims must "fall fairly within the scope of the

prior EEOC complaint". <u>Butterbaugh</u>, 479 F.Supp.2d at 497.  Here,
unlike the Treasury Managing Officer and Wealth Management
Advisor position, plaintiff does not refer to her non-selection
for the Equipment Finance and Credit Review Officer positions in
either of her EEOC charges or her Civil Action Complaint.[51]

Nor does plaintiff allege she was constructively
discharged in either her EEOC charges or complaint.  In fact, at
the time plaintiff filed her EEOC charges, she was still working
for PNC.

Therefore, plaintiff's non-selection for the Equipment
Finance and Credit Review Officer positions, and her resignation
from PNC, do not provide a basis for recovery.  <u>See</u> <u>Vulcan</u>
<u>Pioneers of New Jersey v. The City of Newark</u>, 374 Fed.Appx. 313,
316 (3d Cir. 2010), in which the court held that defendant was
entitled to summary judgment when plaintiff failed to allege in
his complaint that defendant's failure to promote was discrimin-
atory.[52]

Nor may plaintiff recover for her non-selection for the
position of Treasury Management Officer.  Although plaintiff
refers to PNC's selection of a younger, less qualified male for

---

[51]    <u>See</u> Exhibits P-6 and P-7, attached to Exhibit A to plaintiff's
summary judgment motion; <u>see</u> <u>also</u> Civil Action Complaint.

[52]    In the same regard, to the extent that plaintiff seeks recovery
for her non-selection for the position of Relationship Manager (N.T. Kosa-
koski, page 113 and 184), she has not exhausted the EEOC's administrative
requirements or provided sufficient notice of that claim in her Civil Action
Complaint.

the position of Treasury Management Officer, plaintiff did not file her first charge with the EEOC until June 10, 2010.

PNC selected Mr. Altwater for the Treasury Management position in 2008, well beyond 300 days before plaintiff filed her EEOC charge.[53]

Plaintiff contends that her EEOC charge was timely because defendant's discriminatory conduct permeated the workplace.  However, plaintiff has not alleged, or produced sufficient evidence to support, a hostile work environment claim.

Moreover, defendant's refusal to hire plaintiff for the Treasury Management Officer position is plainly a discrete act, which occurs at the time it happened.  National Railroad Passenger Corporation, 536 U.S. at 113, 122 S.Ct. at 2073, 153 L.Ed.2d at 122.

Plaintiff also contends that the doctrine of equitable tolling should relieve her from filing a timely EEOC charge because defendant lulled plaintiff into forgoing prompt attempts to vindicate her rights.  However, plaintiff does not provide any evidence that defendant prevented plaintiff from asserting her rights.

Accordingly, the doctrine of equitable tolling does not apply, and plaintiff's EEOC charge was untimely.  See National

---

[53]     It is not clear precisely when PNC selected Mr. Altwater for the position.  Defendant asserts it was in November 2008.  Plaintiff indicates it was in 2008 but does not provide any more information.  (Defendant's statement of facts, ¶ 90; N.T. Kosakoski, page 163).

Railroad Passenger Corporation, 536 U.S. at 113, 122 S.Ct. at 2072, 153 L.Ed.2d at 122, in which the court indicated that the doctrine of equitable should be applied "sparingly".

Therefore, for all the forgoing reasons, plaintiff may not recover for the allegedly discriminatory conduct involving her resignation, or her non-selection for the positions of Treasury Management, Equipment Finance, or Credit Review Officer. However, for some of defendant's allegedly discriminatory conduct, plaintiff properly exhausted the administrative requirements of the EEOC.

Accordingly, this conduct must be analyzed to determine if plaintiff has presented sufficient evidence to proceed to trial on her ADEA, Title VII and ADA claims.

### Age Discrimination in Employment Act

In Count I plaintiff asserts a claim for violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634.

To establish a prima facie case of age discrimination under ADEA, generally a plaintiff must establish that (1) she was over 40 years of age; (2) she applied for and was qualified for the position in question; (3) she suffered from an adverse employment action; and (4) the position was filled with a person sufficiently younger to support an inference of discriminatory

intent.  <u>Narin v. Lower Marion School District</u>, 206 F.3d 323, 331 (3d Cir. 2000).

The "precise elements of a plaintiff's prima facie case may vary with the particular circumstances." <u>Cashman v. CNA Financial Corp.</u>, 2012 U.S.Dist. LEXIS 4249 at *29 (E.D.Pa. Jan. 13, 2012) (Stengel, J.).

Here, plaintiff fails to make out a prima facie case of age discrimination because she has not established that a person sufficiently younger was treated more favorably.

Concerning her non-selection as the Wealth Management Advisor, PNC filled the position with Mr. Walter, who is seven years older than plaintiff.  Therefore, as a matter of law, plaintiff has failed to establish a prima facie case of age discrimination.

Likewise, regarding the positions of Business Advisor and Banking Sales Manager, for which plaintiff did not apply, plaintiff has failed to establish that they were filled by someone sufficiently younger to create an inference of age discrimination.  In fact, plaintiff does not indicate the age of either Mr. Switzler, who was hired as the Business Banker, or Mr. Bender, who was hired as the Banking Advisor.

Upon a review of the record, it does not appear that the age of either Mr. Switzler and Mr. Bender is ever referred to.[54]

Therefore, plaintiff has failed to establish a prima facie case for age discrimination.  Accordingly, defendant's motion for summary judgment is granted to the extent that it seeks summary judgment on Count I on plaintiff's complaint.

### Title VII

In Count IV plaintiff asserts a claim for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.[55]

---

[54]    Even if Mr. Switzler and Mr. Bender are in fact sufficiently younger than plaintiff, plaintiff could still not establish a prima facie case of age discrimination because she did not apply for the positions.

Generally, a plaintiff must apply for a position, and be rejected, in order to establish a prima case of discrimination.  Kovoor v. School District of Philadelphia, 211 F.Supp.2d 614, 624 (E.D.Pa. 2002).  However, submission of a formal application is not always required.  See Equal Employment Opportunity Commission v. Metal Service Company, 892 F.2d 341, 348-349 (3d Cir. 1990) (collecting cases).  For example, if applying for the position would be futile based on the employer's past discriminatory conduct, or if the employer does not post a job vacancy and the plaintiff "did everything within [her] power to apply for the position", the plaintiff is not required to formally apply for a position to establish a prima facie case.  Id.

Here, plaintiff expressed to Mr. Shoemaker and Mr. Sposito that she would be interested in positions other than her position as a Business Banker and requested that she be reassigned to another position.  However, plaintiff did not apply because she was not informed of the vacancy, or because she assumed that, because she requested a transfer as an accommo-dation for her disability, she did not have to apply.  (N.T. Kosakoski, page 186).

Defendant's failure to inform plaintiff of the opening, without additional evidence, does not support an inference of age discrimination.

[55]    Because the analysis of Title VII claims is similar to ADEA claims, I address Count IV before II and III.

-36-

Similar to claims brought under ADEA, to establish a prima facie case under Title VII, a plaintiff must establish that (1) she belongs to a protected class; (2) she applied for, and was qualified for, the position in question; (3) she suffered an adverse action; and (4) similarly situated persons who are not members of the protected class were treated more favorably. Norman v. Reading School District, 2010 WL 1348455 at *4 (E.D.Pa. Mar. 30, 2010) (Sitarski, M.J.).

Here, unlike her claim under the ADEA, plaintiff has established a prima facie case for gender discrimination under Title VII. Plaintiff is a woman and therefore a member of a protected class; and she applied to, and was qualified for, the Wealth Management Advisor position.[56] Additionally, despite her qualifications, she was rejected for the position.

If a plaintiff establishes a prima facie case, the employer must identify a "legitimate, nondiscriminatory reason for the adverse employment action". Swain v. Vineland, 457 Fed.Appx. 107, 110 (3d Cir. 2012). The employer's burden is "relatively light" because the plaintiff bears the burden of persuasion at all times. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

---

[56]   As discussed in footnote 54, above, plaintiff may not recover for her non-selection for the Business Advisor and Business Banking Manager positions because she did not apply for them. Moreover, without providing more information about the qualifications of Mr. Switzler and Mr. Bender, or the qualifications required for the positions, plaintiff cannot establish that those individuals were similarly situated to plaintiff.

In this case, defendant asserts that Mr. Walter, who was selected as the Wealth Management Advisor, was more qualified than plaintiff.  Defendant further indicates that it has a policy of filling vacancies with the most qualified applicant and does not give preference to current employees applying for positions within PNC.

This satisfies defendant's "relatively light" burden of proffering a "legitimate, nondiscriminatory reason" for rejecting plaintiff's application for the position.

Once the employer articulates a legitimate reason for the adverse employment action, a plaintiff must show by a preponderance of evidence that the employer's explanation is pretextual.  Id.  To establish pretext, a plaintiff must provide evidence from which a factfinder could either (1) disbelieve defendant's articulated legitimate reason for the adverse action; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id. at 764.

Ultimately, a plaintiff must establish that "*both* the reason was false, *and* that discrimination was the real reason."  Fuentes, Id. at 763. (emphasis in original).  Therefore, a plaintiff "cannot simply show that an employer's decisions were wrong or mistaken."  Id. at 764.

-38-

Here, plaintiff has not provided sufficient evidence that defendant's purported reason was pretextual.  Plaintiff's asserts that she can demonstrate that PNC's purported reason is pretextual because Ms. Yon, who interviewed plaintiff for the position, and made the hiring decision, told plaintiff that she had equivalent qualifications as Mr. Walter.

However, even if true, such a fact does not create and inference that either defendant's articulated reason for the adverse action is false and invidious discrimination was the more likely determinative cause of PNC's action.[57]

Accordingly, because plaintiff has failed to establish that PNC's purported reason for her non-selection to the position of Wealth Management Advisor was pretextual, defendant is entitled to summary judgment with respect to Count IV of plaintiff's complaint.[58]

### Americans With Disabilities Act

In Count III plaintiff asserts a claim for discrimination in violation of the Americans with Disabilities

---

[57]     In fact, Ms. Yon indicates that she recommended that PNC hire  Mr. Walter for the position because he had more experience in private banking and wealth management with other financial institutions.

[58]     It is worth noting that Mr. Shoemaker's group called the Rising Stars does not, as plaintiff contends, provide evidence of gender bias.

First, Mr. Shoemaker, who managed the group known as the Rising Stars, was not involved in plaintiff's non-selection for the Wealth Management Advisor position.  Second, and more importantly, although plaintiff indicates she thought the group consisted predominantly of men, she did not have personal knowledge of the membership of the Rising Stars.  In fact, it appears that women not only were in the group, but also served as mentors to group members.  (See N.T. Shoemaker, page 54-57).

Act, 42 U.S.C. §§ 12101 to 12213.  In Count IV she asserts an ADA retaliation claim.

## A. *Discrimination*

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that she (1) is a disabled person within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) suffered from an adverse employment decision because of her disability. Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751, 761 (3d Cir. 2004).

Here, defendant does not dispute that plaintiff is disabled or that she is qualified to perform the essential functions of her job.  However, defendant asserts that plaintiff has failed to establish that she suffered from an adverse employment decision because of her disability.

Adverse employment decisions include refusing to make reasonable accommodations for a plaintiff's disabilities.  Id. The ADA specifically provides that an employer discriminates against a qualified individual with a disability when the employer does not make reasonable accommodations for the employee unless the employer can demonstrate that the accommodations would impose an "undue hardship" on the business operation of the

employer.  <u>Williams</u>, 380 F.3d at 761 <u>quoting</u>  42 U.S.C.
§ 12112(b)(5)(A).

Among the accommodation requests made by plaintiff was
to be transferred to another position.[59]  In response to
plaintiff's request to be transferred, defendant indicated that
it had a policy of hiring the most qualified applicant for the
position and that plaintiff would have to go through the same
process as any external candidate.[60]

Defendant contends that plaintiff was not entitled to
be automatically transferred to vacant positions for which she
was qualified on account of her disabilities.  Defendant asserts
that it has a policy of hiring the most qualified applicant for
vacant positions.

In support of its position defendant cites <u>Huber v.
Wal-Mart Stores, Inc.</u>, 486 F.3d 480, 483 (8th Cir. 2007), which
held that "the ADA is not an affirmative action statute and does
not require an employer to reassign a qualified disabled employee
to a vacant position when such reassignment would violate a
legitimate nondiscriminatory policy of the employer to hire the
most qualified candidate."

---

[59]    In fact, plaintiff requested that she be transferred to another
position before she identified her medical issues as a basis for her transfer.
However, she subsequently requested to be transferred to another position
because she was "floundering" as a Business Banker.  In addition, her
psychological evaluation recommended that, if certain accommodations in
plaintiff's position could not be met, she be reassigned.

[60]    <u>See</u> Plaintiff's Exhibit P-28, attached to plaintiff's deposition
transcript.

However, the Huber Court relied significantly on the
decision in Equal Employment Opportunity Commission v. Humiston-
Keeling, 227 F.3d 1024 (7th Cir. 2000), which was expressly
overruled in Equal Employment Opportunity Commission v. United
Airlines, Inc., 693 F.3d 760 (7th Cir. 2012).[61]

In EEOC v. United Airlines, the United States Court of
Appeals for the Seventh Circuit held that "accommodation through
appointment to a vacant position is reasonable" and that
"[a]bsent a showing of undue hardship, an employer must implement
such a reassignment policy."  693 F.3d at 764.  Moreover, the
court held a "best-qualified selection policy" does not
categorically amount to an undue hardship for an employer.  Id.

Additionally, the Huber decision may be contrary to
Third Circuit precedent.  See Haynes v. AT&T Mobility, LLC,
2011 WL 532218 (M.D.Pa. Feb. 8, 2011) in which the court held
that Shapiro v. Township of Lakewood, 292 F.3d 356 (3d Cir. 2002)
(Alito, J.) precluded following the rationale in Huber.

In Shapiro, a disabled employee sought a transfer to
another position in the company but failed to formally apply for
the position.  The employer had a policy of requiring employees
seeking transfers apply for the positions they seek.
292 F.3d at 360.

---

[61]    The United States Court of Appeals overruled Humiston-Keeling
based on the decision in U.S. Airways, Inc. v. Barnett, 535 U.S. 391,
122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).

Based on <u>U.S. Airways, Inc. v. Barnett</u>, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002), the United States Court of Appeals for the Third Circuit held that in cases in which a requested accommodation in the form of a job reassignment is claimed to violate an employer's disability-neutral rule, a court must consider if the accommodation appears reasonable on its face.  If the accommodation appears reasonable, the employer must show that it would cause an undue hardship.  <u>Id.</u> at 361.

However, even if the accommodation does not appear reasonable "in the run of cases", the employee could still prevail by showing "special circumstances warrant a finding that the accommodation is reasonable under the particular circumstances of the case."  <u>Id.</u>

Normally, a request for reassignment is a reasonable accommodation request.  <u>See</u> <u>EEOC v. United Airlines</u>, 693 F.3d at 764, n.3.[62]

Therefore, in this case, after plaintiff requested that she be reassigned based on her disability, and positions became available for which plaintiff was qualified, defendant had the burden to show that such reassignment would cause an undue hardship.

---

[62]    However, in order for a request for reassignment to be reasonable, plaintiff must "demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as his former job."  <u>Shapiro</u>, 292 F.3d at 359.

Here, defendant asserts that reassigning plaintiff to a vacant position would cause an undue hardship because it "should be permitted to rely on its neutral policy of hiring the most qualified applicant for each and every position".[63]

However, a "best-qualified selection policy" does not categorically amount to an undue hardship for an employer.  <u>EEOC v. United Airlines</u> 693 F.3d 760 (7th Cir. 2012).  Moreover, defendant does not dispute that plaintiff was qualified for the positions at issue.

Plaintiff forwent applying for two vacant positions, either because she was not informed that they were open, or because she assumed that, because she was seeking a transfer based on her disability, she was not required to apply.  Additionally, defendant hired Mr. Walter for the position of Wealth Management Advisor based on its policy to hire the most qualified applicant.

Therefore, plaintiff has identified multiple vacant positions for which she was qualified.  Moreover, Ms. Yon, who interviewed plaintiff for the position of Wealth Management Advisor told plaintiff that she had equivalent qualifications to Mr. Walter, who was selected for the position.  Such a statement undermines defendant's assertion that transferring plaintiff would have caused it an undue hardship.

---

[63]     Defendant's Brief in Support of Its Motion for Summary Judgment, page 20.

Moreover, defendant has not asserted that Mr. Switzler, or Mr. Turner, who were selected for the Business Advisor and Banking Sales Manager positions, instead of plaintiff, were more qualified.

Accordingly, plaintiff has presented sufficient evidence that defendant did not make reasonable accommodations for her disability.  Therefore, defendant is not entitled to summary judgment on Count III.[64]

---

[64]   In addition to defendant's failure to consider plaintiff for a transfer, plaintiff has also presented sufficient evidence that defendant did not engage in a good faith effort to provide her with other appropriate accommodations.

To determine the appropriate reasonable accommodation for an employee, both the employer and employee have a duty to engage in an "interactive process."  Accordingly, once a qualified individual with a disability has requested a reasonable accommodation, an employer is required to make "reasonable efforts to assist the employee and to communicate with the employee in good faith" <u>Williams</u>, 380 F.3d at 762, 771.

During the interactive process, the employee is not required to offer or suggest a specific reasonable accommodation that the employer rejected to prevail in their ADA claim.  However, a plaintiff cannot recover without showing that a reasonable accommodation was possible.  <u>Taylor v. Pheonixville School District</u>, 184 F.3d 296, 315, 317 (3d Cir. 1999).

Accordingly, to show that an employer failed to participate in the interactive process, a disabled employee must demonstrate that (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.  <u>Taylor</u>, 184 F.3d at 319.

An employer can show their good faith by meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some signs of having considered the employee's request and discussing available alternatives when the request is too burdensome.  <u>Id.</u> at 317.

Here, it is undisputed that PNC knew about plaintiff's disability and that plaintiff requested accommodations for her disability on multiple

(<u>Footnote 64 continued</u>):

B. *Retaliation*

In order to establish a prima facie case of illegal retaliation under the ADA, a plaintiff must show (1) that she engaged in protected activity; (2) that she suffered from an adverse action by the employer either after or contemporaneous

---

(Continuation of footnote 64):

occasions. (See N.T. Kosakoski, pages 30-33; Defendant's statement of facts, ¶ 19.

It is also undisputed that defendant made some accommodations for plaintiff. For example, at plaintiff's request defendant reduced the number of branches plaintiff managed, initially from three to two and then from two to one.

However, although plaintiff requested to be transferred from her position as a Business Banker, defendant failed to inform her of vacant positions for which she was qualified. Even if defendant considered transferring plaintiff to another position over a better-qualified candidate to be an undue hardship, it does not seem that notifying plaintiff of open positions would constitute an undue hardship.

Additionally, some of plaintiff's requests for accommodations were rebuffed without explanation or were provided haphazardly. For example, plaintiff requested that she be provided a flexible schedule and be permitted to work from home. Although defendant generally permitted plaintiff to work from home, it failed to provide her with remote access to PNC's network, rendering that accommodation essentially meaningless.

Likewise, although plaintiff provided a psychological report indicating that she would benefit from an administrative assistant, defendant requested additional documentation and explanation regarding that request. (See Plaintiff's Exhibits P-25 and P-30, attached to plaintiff's deposition).

Moreover, at Mr. Klinger's suggestion, plaintiff requested that she be permitted to utilize a first floor conference room as her office. PNC denied this request even though the office was only used once a week by a PNC Investment's employee (although PNC did inquire as to how the first floor office would have helped given plaintiff's medical conditions). (See Plaintiff's Exhibit P-25, attached to plaintiff's deposition).

Defendant clearly made some effort to engage with plaintiff. Additionally, the interactive process "does not dictate that any particular concession must be made by the employer". However, drawing inferences in favor of the nonmoving party, as I am required to do, I cannot conclude as a matter of law that defendant met its obligations to plaintiff.

-46-

with the employee's protected activity; and (3) a causal
connection between the employee's protected activity and the
employer's adverse action.   Williams v. Philadelphia Housing
Authority Police Department, 380 F.3d 751, 759 (3d Cir. 2004).

     Here, it is undisputed that plaintiff engaged in
protected activity, such as taking FMLA leave, seeking
accommodations for her disability and filing two EEOC charges.
However, defendant contends that plaintiff has not established
that she suffered from an adverse action or that any adverse
action was causally connected to plaintiff's protected activity.

     An adverse employment action is an "action by an
employer that is serious and tangible enough to alter an
employee's compensation, terms, conditions, or privileges of
employment."   Cashman v. CNA Financial Corp. v. Continental
Casualty Co., 2012 U.S.Dist. LEXIS 4249 at *32 (E.D.Pa. Jan. 13,
2012).

     Accordingly, negative performance evaluations are not
generally adverse employment actions.   Id. at *33.   However, if a
negative performance evaluation has some "tangible effect upon
the recipient's employment" is may constitute an adverse action.
Id.

     Once a plaintiff establishes that she suffered from an
adverse action, a fact finder may infer a causal connection
between the protected activity and the adverse action if the

-47-

timing of the adverse action suggests it was related to the protected activity, or if plaintiff produces evidence of ongoing antagonism on the part of the employer. Abramson v. William Paterson College, 260 F.3d 265, 288 (3d Cir. 2001).

Although temporal proximity between the protected activity and the adverse action "can be itself sufficient" to establish a causal link, the timing of the alleged retaliatory action must be "unusually suggestive of retaliatory motive before a causal link will be inferred." Williams, 380 F.3d at 759.

When timing is not "unduly suggestive", "timing plus other evidence" is required to establish an inference of causation. Id.

Here plaintiff contends that PNC did not select her for the position of Wealth Management Advisor, launched an internal investigation against her, and gave her negative performance evaluations in retaliation for engaging in protected activity.

Regarding plaintiff's non-selection to the position of Wealth Management Advisor, plaintiff has not produced any evidence that Caron Yon and Shane Zimmerman, who interviewed plaintiff for the position and made the hiring decision, knew that plaintiff engaged in protected activity or had medical issues. In fact, both Ms. Yon and Mr. Zimmerman indicate that they did not know plaintiff had any medical issues at the time they interviewed plaintiff.

-48-

Similarly, plaintiff has not provided any evidence that PNC's internal investigation of plaintiff, which was prompted by DeeAnn Carpenter's report to the ERIC hotline, was in retaliation for engaging in protected activity. Plaintiff has not presented any evidence that Ms. Carpenter knew plaintiff was engaged in protected activity. Additionally, although plaintiff suspects that Mr. Klinger directed Ms. Carpenter to report plaintiff, plaintiff has not produced any evidence to substantiate her suspicion.

Accordingly, neither plaintiff's non-selection to the Wealth Management Advisor position, nor PNC's internal investigation of plaintiff provide a basis to support her retaliation claim because she hasn't established a causal connection between her protected activity and the adverse actions.

However, Mr. Shoemaker and Mr. Klinger, who issued plaintiff's negative performance evaluations had knowledge that plaintiff engaged in protective conduct.

Although negative performance evaluations do not generally constitute adverse employment actions, here, PNC had a policy that employees with poor performance evaluations could not apply to transfer to another position within the company.

Defendant asserts that it waived this policy for plaintiff and that Mr. Shoemaker's evaluation of plaintiff was

-49-

rescinded, thereby giving plaintiff the opportunity to start with a clean slate.[65]

However, it is not clear whether Mr. Shoemaker's evaluation was ever rescinded.  Nor is it clear that defendant waived its policy for every job opening plaintiff sought. For example, when plaintiff applied the position of Relationship Manager, she was told that she was not eligible pursuant to PNC's policy because her performance review was not "achieves or above".  Additionally, plaintiff was told that while Mr. Shoemaker's evaluation of her was being investigated, plaintiff could not apply for positions because she did not have a job review within PNC's system.[66]

Therefore, a genuine issue of material fact exists as to whether plaintiff's negative performance evaluations constituted adverse actions for purposes of her retaliation claim.  Moreover, plaintiff has presented sufficient evidence that her negative evaluations were causally linked to her protected activity.

Here, plaintiff engaged in protected activity by taking FLMA leave from October 16, 2009 through November 15, 2009.[67]  On

---

[65]     See N.T. Lockard, pages 38-39; N.T. Kosakoski, page 113; N.T. Ginder, page 12.

[66]     N.T. Kosakoski, page 112.

[67]     Plaintiff does not assert an FMLA retaliation specifically. However, it is undisputed that defendant suggested plaintiff exercise FMLA leave as an accommodation for her disability.

February 1, 2010 Mr. Shoemaker gave plaintiff a negative evaluation.

Generally, two and a half months between the time of the protected activity and the time of the adverse action is insufficient to create an inference of causation.  See <u>Williams</u>, 380 F.3d at 760.

However, here, Mr. Shoemaker's evaluation was inaccurate.  In fact, after plaintiff complained to the Human Resources Department, defendant investigated the performance review and determined that there were inaccuracies.

Moreover, the evaluation was inaccurate *because of* plaintiff's protected activity.  Specifically, the performance review did not account for her sales because of her FMLA leave. Further the review admonished plaintiff for missing a meeting that plaintiff could not attend because of a doctor's appointment, which plaintiff was permitted to take pursuant to her intermittent FMLA leave.[68]

Thus Mr. Shoemaker's evaluation creates an inference that Mr. Shoemaker was antagonistic about plaintiff engaging in protected activity.  Additionally, although plaintiff's evaluation came two and a half months after plaintiff engaged in

---

[68]    The record is not clear whether plaintiff took this appointment pursuant to intermittant FMLA leave or used a sick day.  Plaintiff asserts that she did not use FMLA leave in 2010.  Nevertheless, whether plaintiff actually used FMLA leave is not pertinent to her retaliation claim.  Rather, the pertinent issue is whether Mr. Shoemaker retaliated against her based on an assumption that she utilized FMLA leave.

Case 5:12-cv-00038-JKG   Document 80   Filed 09/26/13   Page 52 of 53


protected activity, it was plaintiff's first performance review after she returned from FLMA leave.

Accordingly, plaintiff has established sufficient evidence that defendant retaliated against her for engaging in protected activity by issuing a false performance evaluation, thereby precluding plaintiff from pursuing job openings within PNC.

Pennsylvania Human Relations Act

In Count V, plaintiff brings identical claims pursuant to the Pennsylvania Human Relations Act.  The PHRA is construed consistently with interpretations of ADEA, Title VII and ADA. Jones v. School District of Philadelphia, 198 F.3d 403 (3d Cir. 1999); Taylor, 184 F.3d at 306.

Therefore, defendant's motion for summary judgment is granted to the extent it seeks summary judgment on plaintiff's age and gender discrimination claims, but denied for plaintiff's disability discrimination and retaliation claims.

CONCLUSION

For all of the forgoing reasons, defendant's motion for summary judgment is granted in part and denied in part.

Defendant's motion is granted to the extent that it seeks summary judgment on Counts I and IV.  It is further granted to the extent it seeks judgment on plaintiff's claims for age and gender discrimination in Count V.

-52-

Defendant's motion for summary judgment is denied in all other respects.